IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. |
| MINER-DEDERICK CONSTRUCTION L.L.P. and GULF CHEMICAL & METALLURGICAL CORPORATION, | § § § § § § | _____ |
| Defendants. | § | |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Amerisure Mutual Insurance Company ("Amerisure") brings this suit seeking a judicial declaration that it does not owe insuring obligations to Defendant, Miner-Dederick Construction L.L.P. ("Miner-Dederick"), with respect to an Underlying Suit brought by Gulf Chemical & Metallurgical Corporation ("Gulf Chemical"), and would show the Court the following:

**NATURE OF THE SUIT**:

**LIABILITY INSURANCE COVERAGE**

1.  This is a liability insurance coverage dispute. Amerisure seeks a declaration that it owes no insuring obligations with respect to claims asserted in an underlying state court lawsuit regarding construction defects in an industrial building owned by Gulf Chemical. General Contractor Miner-Dederick allegedly breached contractual specifications so that the expansion building leaked pollutants into the soil at Gulf Chemical. Gulf Chemical repaired the building to stop the leaks, and brought a successful breach of contract action in state court against Miner-

**PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF – PAGE 1**

Dederick. Amerisure had previously issued liability insurance to Miner-Dederick to cover liabilities resulting from "accidents." Such coverage was subject to certain exclusions to negate normal "business risks," such as liabilities due to the insured's breach of its contracts. And, the policy contained a Pollution Exclusion. Until recently, Amerisure defended Miner-Dederick in that action subject to a Reservation of Rights to deny coverage. Amerisure now withdraws that defense and seeks a judicial declaration that it owes neither a duty to defend, nor a duty to indemnify, Miner-Dederick from the claims in the Underlying Suit. Gulf Chemical is joined as a party with an interest in the subject matter.

## JURISDICTION AND SERVICE OF PROCESS

2.  This Court has jurisdiction pursuant to diversity jurisdiction, 28 U.S.C §1332, for civil actions between citizens of different states.

3.  Amerisure Mutual Insurance Company is incorporated under the laws of the State of Michigan, with its principal place of business at 26777 Halsted Road, Farmington Hills, MI 48333-2060, and, therefore, is a citizen of the State of Michigan.

4.  Miner-Dederick Construction, L.L.P. is a Texas limited liability partnership with its principle place of business at 1521 Peden Street, Houston, Texas 77006. It is a citizen of Texas. Miner-Dederick may be served with process by serving its Registered Agent, Miner-Dederick, LLC, whose Registered Agent is Thad S. Miner, at 1521 Peden Street, Houston, Texas 77006.

5.  Gulf Chemical & Metallurgical Corporation is a Texas corporation with its principle place of business at 302 Midway Road, Freeport, Texas 77541. It is a citizen of Texas. Gulf Chemical may be served with process by serving its Registered Agent, David Pacella, at 302 Midway Road, Freeport, Texas 77541. Gulf Chemical has an interest in the subject matter of this case.

6. The amount of controversy in this case is in excess of $75,000, exclusive of interest and costs. Specifically, Amerisure seeks a declaration regarding any duty to defend and/or indemnify its insured with respect to an underlying judgment that exceeds one million dollars.

## VENUE

7. Venue for this case is proper in the Southern District of Texas, Houston Division. This is solely a diversity suit controlled by the venue provisions of 28 U.S.C. § 1391 (a) and (c). Venue is proper in the Southern District of Texas because the Defendants reside within the Southern District of Texas. And, the Underlying Suit was brought in the state court of Harris County, Houston, Texas.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

8. The "facts" alleged in this action are largely those asserted by Gulf Chemical in the underlying lawsuit. This is not because Amerisure agrees with such allegations nor judicially admits them to be true. Rather, such analysis is required by the *Complaint Allegation Rule*, also known as the *Eight Corners Rule*, which applies to the duty to defend under liability insurance coverage. Such an assumption will dominate Amerisure's contentions and arguments throughout this declaratory judgment action.

9. Gulf Chemical is a re-cycler of "spent catalyst," a powder-like material containing free liquids, including oil and water. Because the spent catalyst and its liquids are pollutants under state and federal law, Gulf Chemical operates such recycling under a *Hazardous Waste Permit* that covers building CB-2 and the hazardous materials in storage.

10. Miner-Dederick is a construction company that primarily operates as a general contractor for public buildings, such as schools, hospitals and churches. In May 2005, Miner-

Dederick won a contract with Gulf Chemical to construct an expansion to Gulf Chemical's industrial storage building, CB-2. Such expansion would allow Gulf Chemical to store larger amounts of the spent catalyst within building CB-2. Such construction necessarily included an Expansion Joint where the floor/foundation of the new construction would meet the floor/foundation of the original CB-2 building. The design and construction details for such Expansion Joint were the subject of competing designs and alternatives.

11. The project was substantially completed in January 2006, and Gulf Chemical began using the newly expanded building to store the spent catalyst materials. Approximately six months later Gulf Chemical employees discovered an "oily sheen" in a nearby storm water ditch.

12. An investigation by Gulf Chemical showed that pollutants were leaking from the failed Expansion Joint built by Miner-Dederick. Miner-Dederick was contacted by Gulf Chemical regarding possible repairs pursuant to the one year warranty period contained within the construction contract. Miner-Dederick conducted its own inspection. Miner-Dederick offered to perform repair and replacement work on the building, but denied that such additional work was within the contractual warranty. Miner-Dederick insisted on additional payments for the repair work, as if this was a new contract. Gulf Chemical did not agree.

13. To comply with environmental regulations, Gulf Chemical incurred substantial costs to contain the leak and remediate the contaminated soil. After Miner-Dederick refused to repair the expansion, Gulf Chemical hired another contractor to make the needed repairs. Such repairs caused an interruption in business while the repairs were being performed. Gulf Chemical lost the use of much of the facility during the repairs and then resumed operations.

14.     In November 2008, Gulf Chemical sued Miner-Dederick in a Texas state court lawsuit filed as Cause Number 2008-66374 in the 215th Judicial District Court for Harris County, Texas.  Such suit included claims for the pollution remediation costs, the costs of repairing the facility, loss of use, and business interruption.  For much of the lawsuit, Gulf Chemical asserted four theories of recovery against Miner-Dederick: breach of contract, breach of express warranty, breach of implied warranty, and negligence.

15.     The allegations in the suit raised serious questions about liability insurance coverage. Nonetheless, Amerisure, as Miner-Dederick's general liability insurer, provided a defense to Miner-Dederick under a Reservation of Rights to deny coverage in the future.  Specifically, Amerisure reserved its rights to deny coverage based on the following exclusions, among others:

- Contractual Liability Exclusion  (b)
- Your Work Exclusion  (l)
- Property Not Physically Injured (m)
- Pollution Exclusion  (f)

16.     Miner-Dederick chose the law firm of Porter Hedges, LLP for its defense.  To date, Amerisure has paid legal fees to such firm in the amount of $516,318.40 for the defense of Miner-Dederick.  Such firm conducted a vigorous defense, asserting defenses based upon failure of proof of causation, breach of contracts by Gulf Chemical, failures in design, spoliation by Gulf Chemicals, etc.  Nonetheless, in discovery, Miner-Dederick was forced to admit that certain aspects of the Expansion Joint did not comply with contractual plans and specifications.  On the other hand, Gulf Chemical's efforts and reports regarding pollution remediation were quite controversial, and included alleged criminal wrongdoing by Gulf Chemical's employees.

**PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF** – Page 5

17. On July 16, 2010, the trial court ruled in favor of Gulf Chemical on its breach of contract claim against Miner-Dederick, granting Gulf Chemical's motion for partial summary judgment. Specifically, the court found that "Defendant Miner-Dederick Construction breached its contract with Plaintiff Gulf Chemical by failing to comply with the plans and specifications." However, a trial was still needed to determine causation, damages, and to resolve Gulf Chemical's claim for breach of express warranty (Miner-Dederick's written obligation to conduct needed repairs within one year from construction).

18. Following the summary judgment ruling, the suit changed by the filing of a Sixth Amended Petition by Gulf Chemical. The Sixth Amended Underlying Petition, Exhibit A hereto, only sought damages for the repair costs, loss of use, and business interruption. And, the amended Underlying Petition sought to recover these damages solely under two contractual theories: *breach of contract* and *breach of the express warranty to make repairs for one year following construction*. (*Id.*, pgs. 6-7, at ¶¶25-32.) The Sixth Amended Petition dropped any tort theories, such as negligence, which is the claim that most often triggers insuring obligations in the context of liability insurance and construction defects. Also, the Sixth Amended Petition dropped any allegations that the accident or damages involved the work of subcontractors.

19. These amendments brought the claims more into alignment with controlling Texas law. All claims that seek to obtain the value of the benefit of a contract sound in contract, not in tort. Also, the pursuit of contractual claims (rather than tort claims) was more advantageous for Gulf Chemical. Under Texas law, Gulf could recover its attorney's fees for breach of contract and breach of express warranty claims. It could not have recovered fees to pursue negligence claims.

20.     Despite the fact that such amendment of pleadings eliminated any duty to defend by Amerisure, Amerisure chose not to withdraw a defense to Miner-Dederick on the eve of the trial. Amerisure continued with the defense, albeit under the continuing Reservation of Rights to deny coverage.

21.     The Underlying Case went to trial based purely on contractual claims. On February 9, 2011, the jury returned a verdict in favor of Gulf Chemical. Gulf Chemical obtained an award of $727,464 for its damages related to Miner-Dederick's breach of contract and breach of the express warranty (to conduct warranty repairs), as follows:

- Remedial damages:     $464,688.00
- Incidental damages:    $104,330.00
- Lost profits:          $158,446.00

Remedial damages were defined as the costs to repair the expansion joint itself. The other two categories were damages related to a loss of use of the building CB-2 during repairs. Specifically, incidental damages were defined as the costs incurred by Gulf Chemical for storage of the spent catalyst while the expansion joint was being repaired. In addition, lost profits were awarded for Miner-Dederick's breach of contract and written warranty.

22.     Furthermore, the jury awarded $907,718 in attorney's fees. Gulf Chemical has now obtained a Judgment awarding such sums. See Exhibit B attached hereto. On information and belief, Miner-Dederick will now proceed with an appeal.

23.     Amerisure has just recently given notice to Miner-Dederick that Amerisure will withdraw its defense (*i.e.* not pay for an appeal), and that Amerisure denies coverage for the Judgment now entered on March 7, 20011 in the Underlying Suit. Amerisure has given notice that,

though it will pay for the cost of the defense through trial and through the effective date of the withdraw (April 9, 2011), Amerisure will then decline to pay any more towards the defense of Miner-Dederick.

24. On information and belief, Miner-Dederick disagrees with such denial of coverage by Amerisure. Both Miner-Dederick, and presumably Gulf Chemical, demand that Amerisure provide coverage for the liabilities resulting from the Underlying Suit and pay the judgment resulting from such suit.

## THE AMERISURE POLICY

25. Amerisure Mutual Insurance Company originally insured Miner-Dederick under a Commercial General Liability ("CGL") policy, form CG 00 01 (12/07), policy number CPP 202034404, with effective dates of May 15, 2006 to May 15, 2007. The policy carried a $1,000,000 per occurrence liability limit. The Insuring Agreement in such policy provided coverage for "occurrences" (accidents) that cause bodily injury or property damage.

26. The claims brought by Gulf Chemical in the Sixth Amended Petition and the liabilities established by the verdict do not qualify as claims for sums to be paid as damages for "property damage" caused by an "occurrence" (an accident).

27. Also, the CGL Policy contained numerous Business Risk Exclusions, including the exclusions for Contractual Liability (Exclusion *b*), and property on which the insured is performing operations Exclusions *j*(5) and *j*(6). The following exclusions all apply to this case:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected or Intended Injury**

"Bodily Injury" or "property damage expected or intended from the standpoint of the insured.

\* \* \*

b. **Contractual Liability**

"Bodily Injury" or "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. The exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are aligned.

\* \* \*

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge,

dispersal, seepage, migration, release or escape of "pollutants" :

 (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

  \*   \*   \*

 (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  \*   \*   \*

(2) Any loss, cost or expense arising out of any:

 (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, ir in any way respond to, or assess the effects of, "pollutants" . . .

  \*   \*   \*

**j.** **Damage To Property**

"Property damage: to:

  \*   \*   \*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k.**     **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

\*    \*    \*

**l.**     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*    \*    \*

**m.**     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or

    (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## CLAIM FOR DECLARATORY RELIEF

28. A dispute has arisen between Amerisure, on the one hand, and Miner-Dederick and Gulf Chemical, on the other, as to Amerisure's duty to defend and the duty to indemnify under the Amerisure CGL Policy.

29. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. 2201 *et seq.*, Amerisure hereby requests that this Court declare the rights and obligations of Amerisure, Miner-Dederick, and Gulf Chemical with regard to the CGL Policy. Specifically, Amerisure requests the following findings and declarations, based upon the allegations, policy provisions, and exclusions cited above:

    A. That Amerisure owes Miner-Dederick no further insurance coverage under its CGL policy.

    B. That no sums are due and owing to Gulf Chemical or Miner-Dederick under the Amerisure CGL Policy and applicable Texas law.

30. The claimant in the Underlying Suit, Gulf Chemical, presumably has an interest in the subject matter of this claim for declaratory relief. Such claimant should be joined as a party who may have an interest in the declaration. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

## CONDITIONS PRECEDENT

31. All conditions precedent to Amerisure securing such declaratory relief have been performed or have occurred.

## PRAYER FOR RELIEF

Amerisure Mutual Insurance Company hereby prays that this Court declare the rights and liabilities of all parties to this case, as requested above, and specifically prays that this Court declare that Amerisure owes no duty to indemnify Miner-Dederick Construction from the above described claims, that Amerisure owes no payments to Miner-Dederick nor Gulf Chemical, and for such other and further relief to which Amerisure may show itself justly entitled.

Respectfully submitted,

/s/ *David M. Pruessner*
**DAVID M. PRUESSNER**
State Bar No. 16364500
S.D. No. 22475
**JES ALEXANDER**
State Bar No. 24040404
S.D. No. 839819
Three Galleria Tower
13155 Noel Road, Suite 1025
Dallas, Texas 75240
(972) 991-6700
(972) 991-6710 [FAX]
**ATTORNEYS FOR PLAINTIFF**
**AMERISURE MUTUAL INSURANCE COMPANY**

5465\PLEADINGS\ PLAINTIFF'S COMPLAINT